Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Jeff S. Westerman (SBN 94559)
jwesterman@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Yufei Wang (SBN 346170)
ywang@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Ave., Suite 500
Burbank, CA  91505
Telephone: (310) 474-9111
Facsimile:  (310) 474-8585

*Counsel for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.F., individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>      v.<br><br>MEDVI LLC,<br><br>              Defendant. | Case No. 26-cv-04247<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1

CLASS ACTION COMPLAINT

Plaintiff J.F. ("Plaintiff"), individually and on behalf of all others similarly situated, by and through the undersigned attorneys, brings this class action against Defendant MEDVi LLC ("Defendant" or "MEDVi"). Plaintiff complains and alleges upon personal knowledge as to Plaintiff's own actions and the investigation of counsel, and upon information and good faith belief as to all other matters, as follows:

## INTRODUCTION

1. Plaintiff brings this class action against Defendant MEDVi for its failure to properly secure and safeguard Plaintiff's and other similarly situated individuals' ("Class Members" or the "Class," defined *infra*) sensitive information, including personally identifiable information ("PII") and protected health information ("PHI") (PHI and PII together, "Private Information").

2. Defendant MEDVi is an American company that provides remote personalized health, wellness and longevity services, accessible from its patients' and customers' homes.

3. As a necessary part of providing its products and services, MEDVi collects its patients' and customers' sensitive PII and PHI.

4. Whenever a new patient or customer completes MEDVi's intake process on its website, www.medvi.org (the "Website"), MEDVi prompts their browser to transmit information to Google-controlled advertising and analytics endpoints, including through Google's remarketing infrastructure. These transmissions occur simultaneously with the patient or customer's interaction with the Website and include the full URL of the pages visited. These URLs, as configured by MEDVi, contain the patient or customer's email address in plaintext, along with information indicating that the patient or customer has completed a medical intake process.

5. MEDVi utilizes tools intended for advertising, analytics, and user profiling within the healthcare services context, resulting in the disclosure of

CLASS ACTION COMPLAINT

information about identifiable individuals seeking medical treatment to third parties outside the provider-patient relationship.

6.      This practice has significant implications: MEDVi explicitly assures users that their information will "never [be] shared" and is protected by HIPAA at the moment it requests their contact information and begins the medical intake process. If users cannot trust these explicit assurances—especially when seeking medical care—the trust fundamental to telehealth and the broader healthcare system is compromised.

7.      MEDVi facilitates these disclosures by embedding tracking technologies on its Website, including Google Ads remarketing and analytics tools (the "Tracking Technologies"). These Tracking Technologies, as implemented, automatically surreptitiously transmit patients' and customers' interactions with MEDVi's Website—including page URLs, identifiers, and associated data—to Google-controlled endpoints simultaneously with those interactions.

8.      Such transmissions expose highly sensitive information concerning MEDVi's prospective and current patients' and customers' healthcare-related activities, including their efforts to obtain prescription weight-loss medications and information derived from their completed medical intake forms.

9.      While simultaneously operating its nationwide telehealth platform, where MEDVi actively encourages prospective patients and customers to provide PII and PHI, MEDVi deploys Tracking Technologies in a manner that causes this sensitive PII and PHI to be automatically transmitted to Google in real time. The transmitted information includes healthcare-related communications with MEDVi, along with email addresses and other identifiers.

10.     Moreover, the information transmitted to Google is *not* anonymized, as it includes users' email addresses in plaintext within URLs sent to Google's advertising infrastructure, along with persistent identifiers and device information. This allows Google to link these communications to specific individuals and

CLASS ACTION COMPLAINT

incorporate the data into user profiles for analytics, marketing, and targeted advertising.

11.    MEDVi intentionally devised its Website to embed patients' and customers' identifying information within URLs automatically sent to third-party tracking services, despite knowing patients and customers would provide sensitive health-related information based on MEDVi's confidentiality assurances.

12.    Patients and customers reasonably expect their interactions with a healthcare platform to remain confidential, especially when providing information for medical treatment. This expectation is bolstered by longstanding medical confidentiality norms and MEDVi's explicit assurances, both in its Notice of Privacy Practices and its intake flow disclosures, that such information is "never shared" and "protected by HIPAA."

13.    In line with these expectations, neither Plaintiff nor Class Members gave informed consent for MEDVi to transmit their healthcare-related communications and identifying information to any other third party, including Google, for advertising or analytics purposes. Purported consent obtained through pre-checked boxes or similar methods was invalid, uninformed, or not legally effective.

14.    By sharing patients' and customers' healthcare-related communications and identifying information to Google via the Tracking Technologies, MEDVi disseminates and enables the capture of information protected widely known to be protected by privacy norms and legal safeguards, including those in HIPAA and similar privacy frameworks.

15.    MEDVi's actions are independently unlawful and undertaken for an improper purpose, thus supporting the application of the crime–tort exception to statutory defenses that might otherwise be claimed under the Federal Wiretap Act.

16.    As a result of MEDVi's conduct, Plaintiff's and Class Members' Private Information was intercepted, disseminated, and integrated into Google's

CLASS ACTION COMPLAINT

data systems, where it is utilized to develop profiles, assess behavior, and facilitate targeted advertising and other commercial activities.

17.    Plaintiff brings this action, individually and on behalf of the Class, to halt MEDVi's unlawful practices, seek damages and other remedies for the invasion of Plaintiff's and Class Members' privacy, and compel MEDVi to fully disclose its data sharing practices and identify all recipients of patients' and customers' Private Information.

18.    With this action, Plaintiff seeks to redress these harms and asserts claims for (i) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1), *et seq.*; (ii) invasion of privacy – public disclosure of private facts under California law; (iii) invasion of privacy – intrusion upon seclusion under California law; (iv) violation of California Constitution Article I, § 1; (v) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631; (vi) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 632; (vii) violation of the Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502, et seq.; (viii) violation of the California Confidentiality of Medical Information Act, Cal. Civil Code §§ 56, et seq.; (ix) negligence; and (x) unjust enrichment.

## PARTIES

19.    Plaintiff J.F. is, and at all relevant times was, a citizen of the State of Florida, residing in Pensacola, Florida.

20.    Defendant MEDVi LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business and base of operations located in Los Angeles, California.

## JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a

CLASS ACTION COMPLAINT

different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

22. This Court has personal jurisdiction over Defendant MEDVi because it conducts substantial business in and maintains its principal place of business in the State of California and this District.

23. Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b) because, *inter alia*, Defendant resides in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. MEDVi and the proliferation and nature of tracking technologies in modern websites.

24. Defendant MEDVi operates as an online, direct-to-consumer digital healthcare platform that connects patients and customers with licensed medical providers and facilitates access to prescription weight-loss medications—particularly GLP-1–based therapies—without requiring in-person doctor visits.

25. In order to use MEDVi's services, patients and customers are required to communicate certain private medical information to MEDVi via its Website, often through a medical intake form.

26. Modern websites, such as MEDVi's, very often use Tracking Technologies like pixels, web beacons, JavaScript tags, and software development kits ("SDKs") to monitor user activity and send data to third parties. These tools are intentionally embedded in a website's code by the website's operators and are programmed to run automatically in a user's browser when a page loads.

27. Tracking Technologies capture and transmit details of a user's interactions, such as pages visited, buttons clicked, and data entered into forms. This data is transmitted in real time automatically, without any user action or consent.

5

28. The information collected often includes persistent identifiers like cookies and device IDs, allowing third parties to link data to specific users across sessions and devices. These technologies can transmit not just metadata but also the content of user communications, including form entries and URLs.

29. Website operators primarily use these tools for advertising, marketing attribution, and user profiling. By sending interaction data to advertising platforms, they enable detailed user profiling and targeted advertising.

30. However, this practice is particularly concerning for healthcare and telehealth platforms with whom users share sensitive personal and medical information, such as MEDVi. In such contexts, tracking technologies can transmit sensitive health information to third parties without users' knowledge or meaningful consent, despite having no medical necessities for the procurement of healthcare services.

**B.    MEDVi utilized Google's Tracking Technologies.**

31. Google assigns and maintains persistent, unique identifiers to users, browsers, applications, and devices, enabling tracking over time and across contexts. These include device-level, application-specific, browser, and account-linked identifiers.

32. Google uses cookie IDs, mobile advertising IDs, application instance IDs, and server-side account identifiers linked to user sign-ins. These identifiers synchronize across services and partner properties, facilitating tracking across websites, apps, and smart devices.

33. Identifiers do not require a user's name, as Google associates them with real-world identities through data points like logins and device configurations.

34. Google's ecosystem consolidates data from various services, creating unified profiles from account data and signals from publishers and advertisers. This enables cross-device targeting and measurement.

CLASS ACTION COMPLAINT

35. Google tracks user behavior through login events, app installations, and interactions with ads, maintaining visibility into activities on third-party sites.

36. Data collected is integrated into an identity graph, linking user activities to individuals.

37. Google collects data via cookies, local storage, beacons, SDKs, Application Programming Interfaces ("APIs"), and server integrations. It gathers telemetry from devices, capturing attributes like screen resolution and operating system characteristics.

38. Google captures search queries, browsing histories, video behavior, and interactions with ads. It obtains location data through GPS, Wi-Fi, and other methods.

39. Google links data from exchanges and brokers to enrich profiles, continuing to process data even when users try to limit tracking.

40. Google monetizes data through targeted advertising, using profiles to segment users and optimize ad performance. Website operators, like MEDVi, contribute data, allowing Google to monetize interactions commercially.

**C.    MEDVi disseminated Plaintiff's and Class Members' Private Information to Google and facilitated Google's interception of their communications.**

41. MEDVi's Website enables patients and customers to communicate sensitive Private Information to MEDVi through intake forms and other means.

42. MEDVi encourages patients and customers to provide their Private Information during the intake and onboarding process. Such Private Information includes contact information, medical history, and other sensitive health-related information.

43. Despite its promises of confidentiality, MEDVi intentionally installed Tracking Technologies on its Website and configured specific webpages to covertly disclose patients' and customers' Private Information to third parties, including Google.

7

CLASS ACTION COMPLAINT

44.    As they navigated and communicated with MEDVi via its Website, patients' and customers' sensitive information was recorded and shared by the Tracking Technologies, which simultaneously transmitted the content of those communications to Google-controlled endpoints.

45.    The information disseminated by MEDVi includes Private Information like patients' and customers' email addresses, whether they completed a medical intake process, and other sensitive healthcare-related interactions.

46.    This Private Information is not anonymized. Instead, it is relayed along with identifying details—including patients' and customers' email addresses in plaintext—enabling Google to relate the disclosed information with specific individuals.

**D.    How MEDVi's disclosed Plaintiff's and Class Members' sensitive health information.**

47.    MEDVi operates the Website and related subpages of www.medvi.com. MEDVi's Website enables visitors to communicate their health information to MEDVi via, among other means, submitting health intake forms to MEDVi.

48.    HTTP requests and responses are ongoing back and forth communications that occur as the Website visitor interacts with the Website. The visitor's browser sends an HTTP request to MEDVi's server, and the server returns an HTTP response that loads the particular webpage or information the Website visitor has requested.

49.    Each webpage, including MEDVi's Website, consists of visible content and underlying instructions ("source code"). The source code directs the browser to perform specific actions when the page loads or certain events occur.

50.    MEDVi intentionally embedded Google Tracking Technologies within its Website's source code, which automatically execute when a webpage

CLASS ACTION COMPLAINT

loads, causing the browser to transmit information to third-party servers, including Google.

51.   As these transmissions are a part of the webpage's source code, they are invisible to Website visitors and occur without their knowledge.

52.   When visitors to MEDVi's Website, such as the Plaintiff and the Class, complete and submit MEDVi's intake form and reach a confirmation page, the embedded source code prompts the browser to send HTTP Requests to Google-controlled endpoints.

53.   Defendant MEDVi structured its Website such that, after completing the intake process, patients and customers are directed to a confirmation page with a URL containing their email address.

54.   This URL is automatically sent to Google through tracking technologies, transmitting the email address directly.

55.   These transmissions occur automatically with each interaction, resulting in Google receiving the email address and confirmation of the completed intake process.

56.   Defendant MEDVi intentionally designed its Website to include sensitive information in URLs sent to third-party tracking services, resulting in the disclosure of MEDVi's patients' and customers', including Plaintiff's and the Class's, Private Information to Google.

57.   Moreover, MEDVi caused the contents of patient and customer communications, including their highly sensitive health information, to be intercepted and disclosed to Google.

58.   As a result, the Tracking Technologies MEDVi has embedded on its Website effectively function as covert surveillance which allow third parties, like Google, to contemporaneously receive user patient and customer communications as they occur.

CLASS ACTION COMPLAINT

59. And because these communications include the Private Information of patients and customers, that Private Information is then automatically incorporated into Google's and other third parties' broader identity network and advertising framework.

**E. MEDVi failed to obtain the consent or authorization of Plaintiff and Class Members.**

60. As detailed *infra*, Plaintiff and Class Members were unaware that their Private information was being surreptitiously shared with Google and other third parties while using the MEDVi Website.

61. MEDVi did not disclose the use of Tracking Technologies that transmitted such sensitive Private Information to Google, opting instead to mislead its patients and customers by claiming that MEDVi "respects" its patients' and customers' privacy, and is "committed to protecting it."[1]

62. Plaintiff and Class Members did not consent to or authorize the sharing of their Private Information with Google or any third party.

63. Any supposed consent obtained through pre-checked boxes or similar methods was not valid, informed, or legally effective.

**F. Patients and customers reasonably expected MEDVi to protect their privacy.**

64. Defendant MEDVi, a healthcare platform, collects sensitive personal and medical information for telehealth services, assuring its patients and customers that it will be confidential and HIPAA-compliant.

65. Patients and customers provided their Private Information, reasonably expecting that it would remain private and secure based on MEDVi's representations.

66. MEDVi's Website, however, transmits this data to third parties like Google without consent, contradicting its privacy promises. This conduct violates

---

[1] *Privacy Policy*, MEDVI, https://home.medvi.org/privacy-policy (last visited Apr. 21, 2026).

10

privacy norms as well as patients' and customers' expectations, as they relied on MEDVi's assurances when providing their Private Information.

67. The unauthorized dissemination of such sensitive information is a significant invasion of privacy.

68. MEDVi's statements about confidentiality were crucial to patients' and customers' decisions to share their information. MEDVi's failure to disclose its data sharing practices renders its statements, at the very least, misleading.

69. MEDVi did not obtain valid consent for this disclosure, as patients and customers were not informed or given a choice. This practice breaches established privacy norms, including those under HIPAA.

70. Plaintiff and Class Members expected their information to remain confidential, reflecting societal norms that demand consent before data sharing. Unauthorized disclosure risks stigma and profiling, as third parties can misuse this information.

71. A reasonable person would find this undisclosed tracking offensive and a violative of their privacy expectations. Plaintiff and Class Members would not have used MEDVi's services had they known that MEDVi would surreptitiously share its data with third parties.

**G.    MEDVi's conduct violates HIPAA.**

72. MEDVi is an entity covered under the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1302d, *et seq*. ("HIPAA"), which sets minimum federal standards for privacy and security of PHI.

73. Under 45 C.F.R. § 160.103, HIPAA defines "protected health information" or PHI as "individually identifiable health information" that is "transmitted by electronic media; maintained in electronic media; or transmitted or maintained in any other form or medium."

74. Under C.F.R. § 160.103, HIPAA defines "individually identifiable health information" as "a subset of health information, including demographic

11

CLASS ACTION COMPLAINT

information collected from an individual" that is (1) "created or received by a health care provider;" (2) "[r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual;" and (3) either (a) identifies the individual; or (b) with respect to which there is a reasonable basis to believe the information can be used to identify the individual."

75.    PHI includes information a patient may provide to a HIPAA regulated entity while using the regulated entity's website. Such PHI can include a patient's "medical record number, home or email address, or dates of appointments, as well as an individual's IP address or geographic location, medical device IDs, or any unique identifying code."[2]

76.    This information is PHI "even if the individual does not have an existing relationship with the regulated entity and even if the [individually identifiable health information], such as IP address or geographic location, does not include specific treatment or billing information like dates and types of health care services."[3] "This is because, when a regulated entity collects the individual's [individually identifiable health information] through its website or mobile app, the information connects the individual to the regulated entity (i.e., it is indicative that the individual has received or will receive health care services or benefits from the covered entity), and thus relates to the individual's past, present, or future health or health care or payment for care.[4]

---

[2] *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. DEPT' OF HEALTH & HUMAN SERVS. (Dec. 1, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html ("HHS Privacy Bulletin").

[3] *Id.*

[4] *Id.*

CLASS ACTION COMPLAINT

77.     HIPAA requires MEDVi to: (a) ensure the confidentiality, integrity, and availability of all electronic PHI it creates, receives, maintains, or transmits; (b) identify and protect against reasonably anticipated threats to the security or integrity of the electronic PHI; (c) protect against reasonably anticipated, impermissible uses, or disclosures of the PHI; and (d) ensure compliance by its workforce to satisfy HIPAA's security requirements. 45 C.F.R. §§ 164.102, *et seq*.

78.     HIPAA further prohibits a healthcare provider, such as MEDVi, from disclosing PHI with third parties, such as Google, except where an individual has expressly consented in advance to the disclosure or under certain HIPAA-compliant contracts. 45 C.F.R. §§ 164.502 & 164.508.

79.     In a Health and Human Services' Health Information Privacy Bulletin, Health and Human Services ("HHS") has confirmed that HIPAA's protections apply to regulated entities' use of tracking technologies on unauthenticated webpages, such as MEDVi's use of the Google Tracking Technologies on its website and related subpages.[5]

80.     To be sure, the HHS Privacy Bulletin is not a pronouncement of new law, but instead reminded covered entities and business associates of their longstanding obligations under existing guidance. The HHS Privacy Bulletin notes that "it has always been true that regulated entities may not impermissibly disclose PHI to tracking technology vendors," then explains how online tracking technologies violate the same HIPAA rules that have existed for decades.[6]

81.     HHS reaffirmed that HIPAA's privacy rules apply "when the information that a regulated entity collects through tracking technologies or discloses to third parties (e.g., tracking technology vendors) includes PHI" and further reminded HIPAA regulated entities that they "are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of

[5] *Id.*
[6] *Id.*

13
CLASS ACTION COMPLAINT

PHI to third parties or any other violations of the HIPAA Rules. *For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures.*"[7]

82.     Upon information and belief, MEDVi did not obtain Plaintiff's and Class Members' express consent to share their sensitive health information nor has MEDVi entered into a HIPAA-compliant contract that would permit such sharing.

83.     Given the application of HIPAA to MEDVi, and that Plaintiff and Class Members must entrust their sensitive health information to MEDVi in order to receive care, Plaintiff and Class Members had a reasonable expectation of privacy in their sensitive health information provided to MEDVi.

## H.     MEDVi's conduct harmed Plaintiff and Class Members.
### *Classwide Injuries*

84.     The FTC has identified data collected about a person's precise location and information about their health as among the most sensitive categories of data collected. Standing alone, these data points "pose an incalculable risk to personal privacy" but when technology companies collect the data, combine it, and sell or monetize it, this amounts to an "unprecedented intrusion" and creates "a new frontier of potential harms to consumers."[8]

85.     For example, the FTC reached a settlement with Flo Health, alleging the company shared sensitive health information about women collected from its period and fertility tracking app with Google and Meta, despite promising to keep

---

[7] *Use of Online Tracking Technologies*, U.S. DEP'T HEALTH & HUMAN SERVS. (July 20, 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/FTC-OCR-Letter-Third-Party-Trackers-07-20-2023.pdf.

[8] Kristen Cohen, *Location, health, and other sensitive information: FTC committed to fully enforcing the law against illegal use and sharing of highly sensitive data*, FED. TRADE COMM'N (July 11, 2022), https://www.ftc.gov/business-guidance/blog/2022/07/location-health-and-other-sensitive-information-ftc-committed-fully-enforcing-law-against-illegal.

CLASS ACTION COMPLAINT

this information private. The FTC warns that the misuse use of such health information exposes consumers to significant harm because: (1) criminals can use the health data to facilitate phishing scams or commit identity theft; (2) stalkers or other criminals can use the data to inflict physical and emotional injury; and (3) the exposure of health information and medical conditions can subject people to discrimination, stigma, mental, anguish, and other serious harms.[9]

86.    As Chris Bowen, The Chief Privacy and Security Officer for ClearData, explained, health information is so valuable because "[y]ou can build [an] entire human persona around a health record. You can create or seek medical treatment, abuse drugs, or get prescriptions." [10] Tom Kellermann, chief cybersecurity officer of cybersecurity firm Carbon Black, has noted how "Health information is a treasure trove for criminals" because it contains "seven to 10 personal identifying characteristics of an individual."[11] Similarly, Paul Nadrag, a software developer for medical device integration and data technology company Capsule Technologies, has noted that "[M]edical records contain a treasure trove of unalterable data points, such as a patient's medical and behavioral health history and demographics, as well as their health insurance and contact information."[12]

---

[9] *Id.*

[10] Will Maddox, *Why Medical Data is 50 Times More Valuable Than a Credit Card*, DMAGAZINE (Oct. 15, 2019), https://www.dmagazine.com/healthcare-business/2019/10/why-medical-data-is-50-times-more-valuable-than-a-credit-card/.

[11] Andrew Steger, *What Happens to Stolen Healthcare Data?*, HEALTHTECH (Oct. 30, 2019), https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon.

[12] Paul Nadrag, *Industry Voices—Forget Credit Card Numbers. Medical Records Are the Hottest Items on the Dark Web*, FIERCE HEALTHCARE (Jan. 21, 2026), https://www.fiercehealthcare.com/hospitals/industry-voices-forget-credit-card-numbers-medical-records-are-hottest-items-dark-web.

15

CLASS ACTION COMPLAINT

87.    Such information, containing extensive personal identifying characteristics, is also valuable to predatory advertisers. This is part of the reason why healthcare data may be valued at up to $250 per record on the black market.[13]

88.    HHS has further recognized the value of individual's health information, explaining that a HIPAA-regulated entity's impermissible disclosure of an individual's PHI through tracking technology, such as the Google's Tracking Technologies, "may result in identity theft, financial loss, discrimination, stigma, mental anguish, or other serious negative consequences to the reputation, health, or physical safety of the individual or to others identified in the individual's PHI. Such disclosures can reveal incredibly sensitive information about an individual, including diagnoses, frequency of visits to a therapist or other health care professionals, and where an individual seeks medical treatment."[14]

89.    However, data is not just valuable to criminals. It is common knowledge that there is an economic market for consumers' personal data, including the sensitive health information MEDVi shared with Google and other third parties. Private, personal information has been recognized by courts as extremely valuable. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 462 (D. Md. 2020) ("Neither should the Court ignore what common sense compels it to acknowledge—the value that personal identifying information has in our increasingly digital economy. Many companies, like Marriott, collect personal information. Consumers too recognize the value of their personal information and offer it in exchange for goods and services.").

90.    In particular, healthcare information has enormous value. Healthcare providers, such as MEDVi "sit on treasure troves: a stockpile of patient health data

---

[13] Tori Taylor, *Hackers, Breaches, and the Value of Healthcare Data*, SECURELINK (June 30, 2021), https://www.securelink.com/blog/healthcare-data-new-prize-hackers.

[14] HHS Privacy Bulletin, *supra* note 57.

16

CLASS ACTION COMPLAINT

stored as electronic medical records."[15] These "files show what people are sick with, how they were treated, and what happened next."[16] Taken together, they're hugely valuable resources for medical discovery." [17] When healthcare providers de-identify the records, *i.e.*, remove identifying information such as names, locations, and phone numbers, healthcare providers can sell the data to partners for research.

91.    Unsurprisingly, healthcare groups have taken advantage of de-identifying medical records. The Mayo Clinic in Rochester, Minnesota is working with a startup to develop algorithms to diagnose and manage conditions based on health data.[18] Fourteen U.S. healthcare systems formed a company to aggregate and sell de-identified data.[19] And one hospital chain even researched an agreement with Google to use patient data to develop healthcare algorithms.[20]

92.    Given the monetary values of sensitive health information, MEDVi deprived Plaintiff and the Class Members of the economic value of their Private Information, including their sensitive health information, by sharing such data without providing proper consideration for Plaintiff's and Class members' property.

### *Plaintiff's Injuries*

93.    Plaintiff J.F. is a resident of the State of Florida and patient of MEDVi who used MEDVi's Website to seek telehealth services.

---

[15] Nicole Wetsman, *Hospitals are selling treasures troves of medical data – what could go wrong?*, THE VERGE (June 23, 2021), https://www.theverge.com/2021/6/23/22547397/medical-records-health-data-hospitals-research.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] Nicole Westman, *Google to use patient data to develop healthcare algorithms for hospital chain*, THE VERGE (May 26, 2021), https://www.theverge.com/2021/5/26/22454817/google-hca-patient-data-healthcare-algorithms.

CLASS ACTION COMPLAINT

94. In connection with using MEDVi's services, Plaintiff was required to provide it with her sensitive Private Information through the completion of MEDVi's online intake form.

95. In requesting, obtaining, collecting, storing, using, and deriving a benefit from Plaintiff's Private Information, MEDVi undertook a duty to act reasonably in its handling of Plaintiff's Private Information.

96. However, without Plaintiff's knowledge or consent, MEDVi disclosed her Private information with third parties, including Google, via the Website's embedded Tracking Technologies.

97. The disclosed information included, among other things, Plaintiff's (1) status as a patient seeking medical treatment; (2) Plaintiff's completed intake form; (3) treatment-related interactions with MEDVi; and (4) identifying information, including Plaintiff's email address, age, date of birth, and medical background.

98. Moreover, MEDVi additionally disclosed data which enabled third parties to identify Plaintiff J.F., including persistent identifiers, device and browser information, and other data sufficient to associate her identity with her interactions on MEDVi's Website.

99. As a result, the deployment of MEDVi's Tracking Technologies enabled third parties to connect Plaintiff J.F.'s identity with her health-related activities and utilize that information for advertising, analytics, and profiling.

## TOLLING

100. MEDVi seamlessly incorporated Google's and other third parties' Tracking Technologies into its Website, providing no indication to patients and customers that they were interacting with a website with the Tracking Technologies enabled.

101. MEDVi had exclusive knowledge that its Website incorporated the Tracking Technologies yet failed to disclose that, by interacting with the MEDVi's

18

CLASS ACTION COMPLAINT

Website, Plaintiff's and Class Members' Private Information would be collected, used, and stored by Google and other third parties.

102. Plaintiff and Class Members could not with due diligence have discovered the full scope of MEDVi's conduct, including because there were no disclosures or other indication that they were interacting with Tracking Technologies on MEDVi's Website.

103. The earliest that Plaintiff and Class Members, exercising due diligence, could have discovered this conduct was when the tracking and data transmissions were analyzed using specialized tools capable of capturing network traffic.

104. All applicable statutes of limitation are tolled under the discovery rule because Plaintiff and Class Members were unaware, and could not reasonably been aware, of MEDVi's wrongful actions.

105. MEDVi's actions constitute a continuing violation and ongoing tort, as its Tracking Technologies repeatedly intercepted and disclosed Plaintiff's and Class Members' Private Information with each interaction on the Website.

106. MEDVi had a duty to disclose the nature and significance of its data collection and sharing practices, including the transmission of Private Information to third parties, but failed to do so.

107. Therefore, MEDVi is estopped from asserting any statute of limitations defense.

## CLASS ALLEGATIONS

108. Plaintiff brings this action individually and on behalf of all other similarly situated individuals pursuant to Fed. R. Civ. P. 23.

109. Plaintiff seeks to represent a Nationwide Class of individuals to be defined as follows:

> All individuals residing in the United States who used MEDVi's Website to complete a medical intake form in connection with seeking treatment through Defendant's Website.

19

CLASS ACTION COMPLAINT

110. Excluded from the Class is Defendant MEDVi and its subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

111. The proposed definition of the Class is based on the information available to Plaintiff at this time. Plaintiff may modify the Class definitions in an amended pleading or when Plaintiff moves for class certification as necessary to account for any newly learned or changed facts as the situation develops and discovery gets underway.

112. **Numerosity:** The members of the Class are so numerous that the joinder of all members is impractical. The exact size of the Class and the identities of the individual members are ascertainable through Defendant's records. Members of the Class are ascertainable. Class membership is defined using objective criteria, and Class Members may be readily identified through Defendant's books and records.

113. **Commonality:** This action involves questions of law and fact common to the Class. Such common questions include but are not limited to:

    a. Whether MEDVi used Tracking Technologies like Google Ads and Analytics to transmit patients' and customers' Website to Google;

    b. Whether the Tracking Technologies sent patients' and customers' interactions, including visited pages and medical intake confirmations, along with identifying information to Google;

    c. Whether the transmitted information, including URLs and healthcare interactions, constituted communication contents or signaling information;

CLASS ACTION COMPLAINT

d. Whether MEDVi's actions involved interception or disclosure of Plaintiff's and Class Members' communications;

e. Whether MEDVi disclosed Private Information to Google, and whether that disclosure extended to Google's advertising platforms;

f. Whether informed consent was obtained from Plaintiff and Class Members regarding the dissemination of their Private Information to Google;

g. Whether Plaintiff and Class Members had a reasonable expectation of privacy in their Website interactions;

h. Whether MEDVi's actions constitute intrusion upon seclusion or public disclosure of private facts;

i. Whether MEDVi's conduct was highly offensive, given the sensitive nature of the Private Information at issue;

j. Whether MEDVi's claims about information protection were false or misleading;

k. Whether MEDVi's actions were unlawful, unfair, or deceptive;

l. Whether MEDVi acted intentionally or recklessly in using the Tracking Technologies;

m. Whether Plaintiff and Class Members are entitled to damages due to MEDVi's conduct;

n. Whether Plaintiff and Class Members are entitled to damages as a result of Defendant's wrongful conduct; and

o. Whether Plaintiff and Class Members are entitled to injunctive relief to enjoin MEDVi's ongoing collection, transmission, and use of their Private Information.

114. **Typicality:** Plaintiff's claims are typical of the claims of Class Members. Plaintiff's and Class Members' claims are based on the same legal

21

CLASS ACTION COMPLAINT

theories and arise from the same unlawful and willful conduct. Plaintiff and Class Members each had their PII and PHI exposed and/or accessed by an unauthorized third party.

115. **Adequacy:** Plaintiff is an adequate representative of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the Class Members and has no interests antagonistic to the interests of the Class Members. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and Members of the Class are substantially identical, as explained above.

116. **Superiority:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all Class Members is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense, and promote uniform decision-making.

117. **Predominance:** Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages are common to Plaintiff and each member of the Class. If Defendant breached its duty to Plaintiff and Class Members, then Plaintiff and each Member of the Class suffered damages by that conduct.

118. Defendant has acted and/or refused to act on grounds that generally apply to the Class making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. R. Civ. P. 23(b)(2).

CLASS ACTION COMPLAINT

## CAUSES OF ACTION

### COUNT I
**Violations of the Electronic Communications Privacy Act
18 U.S.C. § 2511(1), et seq.
Unauthorized Interception, Use, and Disclosure
(On behalf of Plaintiff and the Class)**

119. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

120. Plaintiff brings this claim individually and on behalf of the Nationwide Class (for purposes of this Count, the "Class") against MEDVi.

121. The Electronic Communications Privacy Act ("ECPA") prohibits the intentional interception of the content of any electronic communication. 18 U.S.C. § 2511.

122. The ECPA protects both the sending and the receipt of communications.

123. 18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

124. The transmission of Plaintiff's and Class Members' Private Information to MEDVi via MEDVi's Website page constitutes a "communication" under the ECPA's definition of 18 U.S.C. § 2510(12).

125. The transmission of this information between Plaintiff and Class Members, on the one hand, and each website with which they chose to exchange communications, on the other hand, are "transfer[s] of signs, signals, writing, . . . data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(12).

CLASS ACTION COMPLAINT

126. The ECPA defines "contents," when used with respect to electronic communications, to "include[] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

127. The ECPA defines an interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

128. The ECPA defines "electronic, mechanical, or other device," as "any device . . . which can be used to intercept a[n]…electronic communication." 18 U.S.C. § 2510(5).

129. The following instruments constitute "devices" within the meaning of the ECPA: (i) the Google Tracking Technologies implemented on Defendant's Website; (ii) Plaintiff's and Class Members' web browsers; (iii) Plaintiff's and Class Members' computing devices; (iv) Defendant's web servers; and (v) the embedded code and scripts which facilitate the transmission and acquisition of communications.

130. Plaintiff and Class Members' interactions with the Website, including their completion and submission of medical intake forms on the Website, are electronic communications under the ECPA.

131. By embedding the Tracking Technologies into its Website, Defendant intentionally facilitated the interception and/or attempted interception of the electronic communications of Plaintiff and Class Members in violation of 18 U.S.C. § 2511(1)(a).

132. By intentionally using, or endeavoring to use, the contents of Plaintiff's and Class Members' electronic communications, while knowing or having reason to know that the Private Information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(d).

24

CLASS ACTION COMPLAINT

133. Defendant was not acting under the color of law to cause the interception of Plaintiff's and Class Members' electronic communications.

134. Plaintiff and Class Members did not authorize Defendant to acquire of the content of their communications for purposes of invading Plaintiff's and Class Members' privacy.

135. Plaintiff and Class Members had a reasonable expectation that Defendant would not intercept their communications for purposes of selling it for advertising purposes without their knowledge or consent.

136. Plaintiff and Class Members visited did not authorize or consent to Defendant intercepting, disclosing, or using the contents of their communications.

137. The foregoing acts and omissions therefore constitute numerous violations of 18 U.S.C. §§ 2511(1), et seq.

138. As a result of every violation thereof, individually and on behalf of Class members, Plaintiff seeks statutory damages of $10,000 or $100 per day for each violation of 18 U.S.C. §§ 2510, et seq. under 18 U.S.C. § 2520.

**COUNT II**
**Invasion of Privacy – Public Disclosure of Private Facts**
**Under California Law**
**(On behalf of Plaintiff and the Class)**

139. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

140. Plaintiff and Class Members disclosed their sensitive Private Information to by Defendant in the course of seeking Defendant's health-related services via communicating with Defendant's Website.

141. The Private Information includes confidential, sensitive, and private health details of Plaintiff and Class Members, including healthcare interests, treatments sought, and general interactions with Defendant's Website, each of which constitutes private facts which are not intended for public dissemination.

CLASS ACTION COMPLAINT

142. Defendant publicly disclosed Plaintiff's and Class Members' private facts by transmitting their healthcare-related interactions and identifying information to third parties, including Google, through embedded Tracking Technologies operating on Defendant's Website.

143. The unauthorized disclosure occurred when Defendant's Website caused the transmission of the private facts to Google and other third parties, contemporaneously with Plaintiff's and Class Members' interactions with Defendant's Website.

144. The disclosure was not made to a confidential or restricted recipient, but rather, Google's and other third parties' large-scale data collection, profiling, and advertising platforms, which that aggregate user data and use it to create and refine user profiles for marketing, analytics, and targeted advertising purposes.

145. As a result of the disclosure, the Plaintiff's and Class Members' private facts were incorporated into Google's broader data infrastructure and made available for use in audience creation, behavioral targeting, and advertising activities across platforms and services beyond Defendant MEDVi's Website.

146. As a result, Defendant's disclosure of Plaintiff's and Class Members' private facts was effectively public because Defendant exposed their healthcare-related data to a system designed for widespread use, integration, and dissemination beyond Defendant MEDVi's control.

147. Courts have recognized that disclosures into digital advertising ecosystems—where user data is aggregated, profiled, and made available for use across multiple contexts—can satisfy the publicity element of a public disclosure of private facts claim.

148. Defendant MEDVi's disclosure of private facts, such as Plaintiff's and Class Members', is highly sensitive and would be highly offensive to a reasonable person if disclosed in this manner.

26
CLASS ACTION COMPLAINT

149.   The disclosed private facts of Plaintiff and Class Members do not constitute a legitimate public concern.

150.   Defendant intentionally, or at least recklessly, used Tracking Technologies to disclose Plaintiff's and Class Members' private facts to Google and other third parties to be used for advertising, analytics, and profiling.

151.   As a direct result of Defendant's actions, Plaintiff and Class Members experienced harm, including invasion of privacy, loss of confidentiality, and loss of control over their sensitive Private Information.

152.   Plaintiff and Class Members seek compensatory damages, injunctive relief, and any other available legal remedies.

**COUNT III**
**Invasion of Privacy – Intrusion Upon Seclusion**
**Under California Law**
**(On behalf of Plaintiff and the Nationwide Class)**

153.   Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

154.   Plaintiff and Class Members have a reasonable expectation of privacy as to their Private Information.

155.   Plaintiff and Class Members disclosed their sensitive Private Information to Defendant via communications with Defendant's Website in the course of seeking out Defendant's medical-related services.

156.   The Private Information included includes confidential, sensitive, and private health details of Plaintiff and Class Members, including healthcare interests, treatments sought, and general interactions with Defendant's Website.

157.   Plaintiff and Class Members had a reasonable expectation that such communications would remain private, protected, and safeguarded by Defendant, and would not be intercepted, monitored, or accessed by third parties.

158.   Defendant intentionally intruded upon and into Plaintiff's and Class Members' private affairs by causing their communications, including

27

CLASS ACTION COMPLAINT

communications regarding their Private Information, to be contemporaneously intercepted and transmitted by third parties, including Google.

159.    Defendant embedded Tracking Technologies into its Website which caused Plaintiff's and Class Members' browsers to covertly transmit their communications, which contained their Private Information, to third parties, including Google, in real time.

160.    These transmissions occurred automatically, without Plaintiff's or Class Members' knowledge, contemporaneously with their communications with Defendant's Website.

161.    Defendant's Tracking Technologies acted as surveillance tools, duplicating and redirecting communications to third parties as they happened.

162.    This conduct is akin to surreptitiously recording a private conversation between a patient and a healthcare provider, constituting an intentional intrusion into Plaintiff's and Class Members' private communications and Private Information.

163.    The intrusion was highly offensive, especially given the sensitive nature of the medical information involved.

164.    A reasonable person would not expect their communications with a telehealth platform to be monitored and shared with third-party advertisers.

165.    Defendant acted intentionally, or at least recklessly, in using these Tracking Technologies.

166.    The conduct was not justified by any legitimate business need, as the technologies were used for advertising, not for providing telehealth services.

167.    As a direct result, Plaintiff and Class Members suffered harm, including invasion of privacy and emotional distress.

168.    Plaintiff and Class Members seek compensatory damages, injunctive relief, and any other available legal remedies.

CLASS ACTION COMPLAINT

**COUNT IV**
**Invasion of Privacy Under the California Constitution, Art. 1, § 1**
**(On behalf of Plaintiff and the Class)**

169. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

170. Article I, section I of the California Constitution states:

> All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

Cal. Const. art I § 1.

171. Plaintiff and Class Members have an interest in preventing the dissemination and misuse of their Private Information by Defendant, and in seeking medical treatments without unwanted surveillance, interception, or intrusion.

172. Plaintiff and Class Members had no knowledge and did not consent or authorize Defendant to obtain their Private Information or to share it with third parties, let alone to use that data in for targeted advertising purposes.

173. Plaintiff and Class Members enjoyed objectively reasonable expectations of privacy surrounding their Private Information, including the Private Information Plaintiff and Class Members disclosed to Defendant via communications with Defendant's Website.

174. Defendant's intrusion upon seclusion occurred the moment Defendant implemented the Tracking Technologies which intercepted and shared Plaintiff's and Class Members' Private Information.

175. Defendant's conduct was intentional and intruded on Plaintiff's and Class Members' reasonable expectation of privacy with regard to their Private Information.

176. Defendant's conduct was highly offensive to a reasonable person because Defendant disclosed sensitive, private health information, despite

29

CLASS ACTION COMPLAINT

representations to the contrary, to third parties without obtaining the consent of Plaintiff and Class Members and in violation of well-established HIPAA rules.

177. As a direct and proximate result of Defendant's invasions of privacy, Plaintiff and Class Members have suffered and will continue to suffer injury and damages, as alleged herein, including but not limited to the invasion of their constitutionally protected privacy rights.

178. Plaintiff and Class Members seek injunctive relief to prohibit Defendant from continuing to surreptitiously intercept, transmit, or otherwise misuse their Private Information.

179. Plaintiff and Class Members also seek punitive damages because Defendant's conduct constituted a willful, malicious, and conscious disregard of their privacy rights.

180. Plaintiff and Class Members further seek any other relief the Court may deem just, proper, and available under Article I, Section 1 of the California Constitution.

**COUNT V**
**Violations of the California Invasion of Privacy Act ("CIPA")**
**Cal. Penal Code § 631**
**(On behalf of Plaintiff and the Class)**

181. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

182. The California Invasion of Privacy Act (CIPA) is codified at Cal. Penal Code §§ 630–638. The Act begins with its statement of purpose:

> The legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society. The Legislature by this chapter intends to protect the right of privacy of the people of this state.

Cal. Penal Code § 630 ("Legislative declaration and intent").

30
CLASS ACTION COMPLAINT

183. California Penal Code § 631(a) provides, in pertinent part:

Any person who, by means of any machine, instrument, or contrivance, or in any other manner . . . willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to lawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars.

184. Speaker of the California Assembly, Jesse Unruh, who introduced CIPA, urged that the law "represents an important advance in California law protecting the inherent rights of our citizens to privacy in their personal affairs. It is far stronger than the laws of many states in this field, and much tougher than the proposed federal eavesdropping legislation." He further emphasized that the law would act as "a powerful deterrent to those who wiretap illegally for profit."

185. MEDVi is a "person" within the meaning of Cal. Penal Code § 631.

186. Each of the following items constitutes a "machine," "instrument," or "contrivance," under CIPA:

    a. The Google Tracking Technologies embedded on Defendant's Website;

    b. Plaintiff's and Class Members' browsers;

    c. Plaintiff's and Class Members' computing devices;

    d. Defendant's web servers; and

    e. Google's servers and systems that received and processed the recorded communications.

187. Defendant accessed or caused to be accessed Plaintiff's and Class Members' private, health-related communications from California. On information and belief, Defendant uses servers located in California that allow Defendant to

31

CLASS ACTION COMPLAINT

access, process, and transmit the Plaintiff's and Class Members' health-related communications.

188.   Defendant was aware that these communications were confidential, as evidenced by its representations that users' information would "never [be] shared" and was "protected by HIPAA."

189.   By embedding the Google Tracking Technologies in its Website and medical intake form webpage, MEDVi (1) intentionally caused Plaintiff's and Class Members' sensitive health and personal information to be intercepted, recorded, stored, and transmitted to Google and other third parties; and (2) intentionally caused the contents Plaintiff's and Class Members' sensitive health and personal information to be accessed by Google and other third parties.

190.   Interception of Plaintiff's and Class Members' private and confidential electronic communications without their consent occurs whenever patients and customers engage with the MEDVi medical intake form webpage.

191.   Plaintiff and the Class Members had a justified expectation under the circumstances that their electronic communications would not be intercepted, especially where MEDVi is a HIPAA-covered entity to whom patients entrust their sensitive health information in order to receive medical care from MEDVi.

192.   MEDVi had no right to intercept, collect, and disclose the Plaintiff's and the Class Members' sensitive health information. Neither Plaintiff nor the Class consented to MEDVi's interception, disclosure, and/or use of their sensitive health information in their electronic communications with the MEDVi's Website. Nor could they. MEDVi never sought to or did obtain Plaintiff's or the Class Members' consent.

193.   MEDVi's conduct has needlessly harmed Plaintiff and the Class by disclosing intimately personal facts and data in the form of their sensitive health information. This disclosure and loss of privacy and confidentiality have caused

CLASS ACTION COMPLAINT

Plaintiff and the Class to experience mental anguish, emotional distress, worry, fear, and other harms.

194. Through its conduct as set out herein, Defendant MEDVi violated California Penal Code § 631(a) by (1) intentionally reading or attempting to read the contents of communications while the communications were in transit; (2) using or attempting to use the contents of those communications; and (3) aiding, agreeing with, and employing third parties to intercept and use those communications.

195. Defendant's conduct represents an invasion of Plaintiff's and Class Members' statutorily protected right to privacy, in violation of law.

196. Defendant's conduct is analogous to surreptitiously wiretapping Plaintiff's and Class Members' private communications with a healthcare platform.

197. As a result of the above violations and pursuant to California Penal Code § 637.2, Defendant is liable to Plaintiff and Class Members for statutory damages of $5,000 per violation or three times actual damages, whichever is greater.

198. Plaintiff and Class Members are also entitled to injunctive relief, declaratory relief, punitive damages, and reasonable attorneys' fees and costs.

## COUNT VI
### Violations of the California Invasion of Privacy Act ("CIPA")
### Cal. Penal Code § 632
### (On behalf of Plaintiff and the Class)

199. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

200. California Penal Code § 632(a) provides, in pertinent part:

> A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation.

33

CLASS ACTION COMPLAINT

201. A "confidential communication" is any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto. *See* Cal. Penal Code § 632(c).

202. Defendant MEDVi is a "person" within the meaning of Cal. Penal Code § 632.

203. Each of the following items constitutes "an electronic amplifying or recording device" under CIPA:

    a. The Google Tracking Technologies embedded on Defendant's Website;

    b. Plaintiff's and Class Members' browsers;

    c. Plaintiff's and Class Members' computing devices;

    d. Defendant's web servers; and

    e. Google's servers and systems that received and processed the recorded communications.

204. At no time did Plaintiff or Class Members consent, expressly or otherwise, to MEDVi's Website utilizing Tracking Technologies to intercept and transmit their sensitive health-related communications to unauthorized third parties.

205. Defendant did not disclose that the Tracking Technologies embedded on its Website would record and transmit the contents of Plaintiff's and Class Members' communications to third parties.

206. Defendant was aware that Plaintiff's and Class Members' communications with its Website were confidential, as reflected in its representations that user information would "never [be] shared" and was "protected by HIPAA."

207. The information intercepted and transmitted by Defendant constitutes confidential communications because Plaintiff and Class Members had objectively

34

CLASS ACTION COMPLAINT

reasonable expectations of privacy in their interactions with Defendant's Website and in the sensitive health-related information they provided.

208. Defendant violated California Penal Code § 632 when it recorded and disclosed Plaintiff's and Class Members' confidential communications without consent.

209. Plaintiff and Class Members have suffered loss by reason of these violations including, but not limited to, violations of their rights to privacy and loss of value in their personally identifiable information.

210. Pursuant to California Penal Code § 637.2, Plaintiff and Class Members have been injured by MEDVi's violations of California Penal Code § 632, and each seeks damages for the greater of $5,000 or three times the amount of actual damages, as well as injunctive relief.

**COUNT VII**
**Violations of the Comprehensive Computer Data Access and Fraud Act**
**Cal. Penal Code § 502, *et seq.***
**(On behalf of Plaintiff and the Nationwide Class)**

211. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

212. The California legislature enacted the Comprehensive Computer Data Access and Fraud Act (the "CDAFA") with the intent of "expand[ing] the degree of protection afforded to individuals . . . from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a). The enactment of CDAFA was motivated by the finding that "the proliferation of computer technology has resulted in a concomitant proliferation of . . . unauthorized access to computers, computer systems, and computer data." *Id.*

213. The CDAFA provides a private right of action to the "owner or lessee of the computer, computer system, computer network, computer program, or data

CLASS ACTION COMPLAINT

who suffers damage or loss by reason of a violation of any of the provisions of subsection (c)." Cal. Penal Code § 502(a).

214. Plaintiff's and Class Members' smartphones, computers, and tablets constitute "computers" within the scope of the CDAFA.

215. Defendant violated the following sections of the CDAFA:

    a. Section 502(c)(1), which makes it unlawful to "knowingly access[] and without permission . . . use[] any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data;"

    b. Section 502(c)(2), which makes it unlawful to "knowingly access[] and without permission take[], cop[y], or make[] use of any data from a computer, computer system, or computer network, or take[] or cop[y] any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network; and

    c. Section 502(c)(7), which makes it unlawful to "knowingly and without permission access[] or cause[] to be accessed any computer, computer system, or computer network."

216. Defendant knowingly accessed Plaintiff's and Class Members' sensitive medical information without their permission by including within the embedding the Tracking Technologies on its Website, which surreptitiously intercepted and transmitted Plaintiff's and Class Members' communications, which included private health information, to unauthorized third parties, including Google.

217. Defendant took, copied, intercepted, and made use of data, communications, and personal information from Plaintiff's and Class Members' smartphones, computers, and/or tablets.

CLASS ACTION COMPLAINT

218. Defendant caused third parties to access Plaintiff's and Class Members' devices through, among other means, the implementation of Tracking Technologies, which then transmitted Plaintiff's and Class Members' private data and communications to unauthorized third party systems.

219. Defendant knowingly and without Plaintiff's and Class Members' permission accessed, or caused to be accessed, their devices by embedding, without Plaintiff's and Class Members' consent, Tracking Technologies that intercept their sensitive, health-related communications with Defendant's Website and transmit them to unauthorized third parties. Plaintiff and Class Members never authorized Defendant to transmit any communications to unauthorized third parties.

220. Defendant accessed or caused to be accessed Plaintiff's and Class Members' private, health-related communications from California. On information and belief, Defendant uses servers located in California that allow Defendant to access, process, and transmit the Plaintiff's and Class Members' health-related communications.

221. Defendant was unjustly enriched when it caused Plaintiff's and Class Members' valuable Private Information, without permission, to be intercepted and disclosed to unauthorized third parties, including Google. Defendant has been unjustly enriched in an amount to be determined at trial.

222. As a direct and proximate result of Defendant's violations of the CDAFA, Plaintiff and Class Members suffered damages.

223. Pursuant to CDAFA Section 502(e)(1), Plaintiff and Class Members seek compensatory, injunctive, and equitable relief in an amount to be determined at trial.

224. Pursuant to CDAFA Section 502(e)(2), Plaintiff and Class Members seek an award of reasonable attorneys' fees and costs.

CLASS ACTION COMPLAINT

225. Pursuant to CDAFA Section 502(e)(4), Plaintiff and Class Members seek punitive or exemplary damages for Defendant's willful violations of the CDAFA.

**COUNT VIII**
**Violations of the California Confidentiality of Medical Information Act**
**Cal. Civ. Code §§ 56, *et seq.***
**(On behalf of Plaintiff and the Class)**

226. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

227. MEDVi, an LLC headquartered in California, obtains and maintains confidential medical and personal information collected from Plaintiff and Members of the Class.

228. Section 56.10 of the CMIA prohibits entities subject to the CMIA, such as MEDVi, from disclosing and negligently releasing the confidential medical information of their patients without authorization. Plaintiff and Class Members did not authorize the public disclosure or release of their confidential medical information.

229. Similarly, MEDVi lawfully came into possession of Plaintiff's and Class Members' healthcare-related information and had a duty pursuant to Sections 56.06 and 56.101 of the CMIA to maintain, store and dispose of Plaintiff's and Class Members' healthcare-related information in a manner that preserved its confidentiality. Sections 56.06 and 56.101 of the CMIA prohibit the disclosure of confidential medical information.

230. As a direct result of MEDVi's disclosure of Plaintiff's and Class Members' confidential medical information without authorization as set forth above, MEDVi violated Section 56, *et seq.*

231. As set forth above, third parties, including Google view, process, and analyze the confidential medical information they receive via the Tracking

CLASS ACTION COMPLAINT

Technologies embedded on Defendant MEDVi's Website, which transmit Plaintiff's and Class Members' communications to those third parties.

232. Plaintiff and Class Members have been injured as a direct and proximate result of MEDVi's violation of the CMIA, and are entitled to: (1) nominal damages of $1,000 per violation; (2) actual damages in an amount to be determined at trial; (3) statutory damages according to § 56.36; and (4) whatever other legal or equitable remedies that this Court deems appropriate.

**COUNT IX**
**Negligence**
**(On behalf of Plaintiff and the Class)**

233. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

234. In exchange for receiving MEDVi's medical-related services, Plaintiff and Class Members were required to provide MEDVi with their sensitive Private Information.

235. Plaintiff and Class Members entrusted their Private Information to MEDVi with the understanding that MEDVi would secure and safeguard it.

236. MEDVi had full knowledge of the sensitivity of Plaintiff's and Class Members' Private Information at the time MEDVi's Website caused its transmission to third parties, including Google.

237. MEDVi knew, or should have known, that it must obtain the express written consent of Plaintiff and Class Members before causing the transfer of their sensitive Private Information.

238. MEDVi had a duty to exercise reasonable care in safeguarding, securing and protecting Plaintiff's and Class Members' Private Information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, obtaining the consent of Plaintiff and Class

CLASS ACTION COMPLAINT

Members before causing their Private Information to be transferred to third parties, including Google.

239. Plaintiff and Class Members had no ability to protect their Private Information that came into the possession of MEDVi by virtue of their communications with MEDVi's Website.

240. MEDVi had a duty to put proper procedures in place to prevent the unauthorized dissemination of Plaintiff's and Class Members' Private Information.

241. MEDVi improperly shared Plaintiff's and Class Members' Private Information with unauthorized third parties, in deviation of standard industry rules, regulations, practices, and various state statutes.

242. MEDVi, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to obtain their consent before compelling transmitting their Private Information to third parties via its Website.

243. But for MEDVi's wrongful and negligent breach of duties owed to Plaintiff and Class Members, Plaintiff's and Class Members' Private Information would not have been unlawfully disclosed and compromised.

244. There is a temporal and close causal connection between MEDVi's failure to secure and safeguard Plaintiff's and Class Members' Private Information and the harm, or risk of imminent harm, suffered by Plaintiff and Class Members as a result of the unauthorized disclosure and subsequent monetization of their Private Information.

245. As a result of MEDVi's negligence, unauthorized third parties, including Google, have acquired Plaintiff's and Class Members' Private Information and will or have monetized that information.

246. As a further result of MEDVi's negligence, Plaintiff and Class Members have suffered and will continue to suffer damages and injury including, but not limited to, (a) the loss of privacy and confidentiality of their sensitive Private Information; (b) the unauthorized sharing of their private communication

40

CLASS ACTION COMPLAINT

contents; (c) reduction in the value of their Private Information; (d) violation of their rights to keep health-related information confidential; (e) exposure to targeted advertising, profiling, and data aggregation based on sensitive health information; (f) time and effort spent addressing the consequences of Defendant's actions and safeguarding their privacy; (g) loss of the expected benefit of services that promised confidentiality; and (h) Defendant's unjust enrichment from exploiting and monetizing Plaintiff's and Class Members' Private Information.

247. Violations of statutes which establish a duty to take precautions to protect a particular class of persons from a particular injury or type of injury may constitute negligence per se.

248. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as MEDVi, of failing to obtain written consent before disclosing Plaintiff's and Class Members' Private Information.

249. MEDVi violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information and by failing to comply with applicable industry standards. MEDVi's conduct was particularly unreasonable given the nature of the Private Information it obtained and stored.

250. MEDVi's violation of Section 5 of the FTC Act constitutes negligence per se.

251. Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

252. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

CLASS ACTION COMPLAINT

253. Defendant's violation of HIPAA also independently constitutes negligence per se.

254. HIPAA privacy laws were enacted with the objective of protecting the confidentiality of patients' healthcare information, including Private Information, and set forth the conditions under which such information can be used, and to whom it can be disclosed. HIPAA privacy laws not only apply to healthcare providers and the organizations they work for, but to any entity that may have access to healthcare information about a patient that—if it were to fall into the wrong hands—could present a risk of harm to the patient's finances or reputation.

255. Plaintiff and Class Members are within the class of persons that HIPAA privacy laws were intended to protect.

256. The harm that occurred as a result of MEDVi's disclosure of the Private Information is the type of harm HIPAA privacy laws were intended to guard against.

257. As a direct and proximate result of MEDVi's negligence per se, Plaintiff and the Class have suffered, and continue to suffer, injuries and damages including, but not limited to an increased risk of identity theft, fraud, and/or misuse of their Private Information.

258. Additionally, as a direct and proximate result of MEDVi's negligence per se, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their Private Information, which remains in MEDVi's possession and is subject to further unauthorized disclosures so long as MEDVi fails to comply with its duty to Plaintiff and Class Members as well as applicable law.

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

**COUNT X**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Class)**

259. Plaintiff realleges and incorporates all previous allegations herein.

260. This claim is pleaded in the alternative to Plaintiff's other claims.

261. Defendant has wrongfully and unlawfully collected, used, and disclosed Plaintiff's and Class Members' money and property, in the form of their Private Information and other data, without their consent through the Tracking Technologies embedded in Defendant's Website.

262. Plaintiff and Class Members have conferred an economic benefit on Defendant in the form of their Private Information, which Defendant transmitted, without Plaintiff's and Class Members' consent, through embedded Tracking Technologies which enabled the transfer of that Private Information to unauthorized third parties, including Google.

263. Defendant, through its conduct, caused itself to derive benefits, including economic benefits, through the enhancement of its marketing capabilities, improvement to its user targeting and profiling, increased conversion rates, reduction of. Customer acquisition costs, and obtainment of value through its relationships with third parties, including Google.

264. Defendant has been unjustly enriched at the expense of Plaintiff and Class Members and has unjustly retained the benefits of its unlawful and wrongful conduct.

265. When a defendant is unjustly enriched at the expense of a plaintiff, the plaintiff may recover the amount of the defendant's unjust enrichment even if plaintiff suffered no corresponding loss, and plaintiff is entitled to recovery upon a showing of merely a violation of legally protected rights that enriched a defendant.

266. Defendant has been unjustly enriched by virtue of its violations of Plaintiff's and Class Members' legally protected rights to privacy as alleged herein.

CLASS ACTION COMPLAINT

267. It would be inequitable and unjust for Defendant to be permitted to retain any of the unlawful proceeds resulting from its unlawful and wrongful conduct.

268. Plaintiff and Class Members accordingly are entitled to equitable relief including restitution and disgorgement of all revenues, earnings, and profits that Defendant obtained as a result of its unlawful and wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other members of the Class, prays for relief as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as a representative of the Class and appointing Class Counsel;

B. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C. For an order equitable relief enjoining Defendant from engaging in the wrongful conduct as alleged herein;

D. For injunctive relief to the extent necessary to protect the interests of Plaintiff and Class Members;

E. For compensatory damages on behalf of Plaintiff and the Class;

F. For punitive damages on behalf of Plaintiff and the Class;

G. Awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

H. Awarding pre- and post-judgment interest on any amounts awarded;

I. For reimbursement for all costs and expenses incurred in connection with the prosecution of these claims; and

J. Awarding of such other and further relief as may be just and proper.

///

///

///

CLASS ACTION COMPLAINT

## **JURY TRIAL DEMANDED**

A jury trial is demanded on all claims so triable.

Dated:  April 21, 2026                                      Respectfully submitted,


                                                            */s/ Tina Wolfson*
                                                            Tina Wolfson (SBN 174806)
                                                            twolfson@ahdootwolfson.com
                                                            Jeff S. Westerman (SBN 94559)
                                                            jwesterman@ahdootwolfson.com
                                                            Theodore W. Maya (SBN 223242)
                                                            tmaya@ahdootwolfson.com
                                                            Yufei Wang (SBN 346170)
                                                            ywang@ahdootwolfson.com
                                                            **AHDOOT & WOLFSON, PC**
                                                            2600 W. Olive Ave., Suite 500
                                                            Burbank, CA  91505
                                                            Telephone: (310) 474-9111
                                                            Facsimile:  (310) 474-8585

45
CLASS ACTION COMPLAINT